1

2

3

4

5

6

7                          **UNITED STATES DISTRICT COURT**

8                          **EASTERN DISTRICT OF CALIFORNIA**

9

10   NATHALIE GALLARDO,                    **1:12-cv-01612 GSA**

11              Plaintiff,

12        v.                               **ORDER REGARDING DEFENDANTS'**
                                           **MOTION  TO DISMISS**
13

14   HANFORD JOINT UNION SCHOOL
     DISTRICT, a California Public School
15   District, CHERYL HUNT, MARK           **(Doc. 27)**
     DUTRA, and ANDREW MAZA,
16
                Defendants.
17

18

19                              **INTRODUCTION**

20        This is a 42 U.S.C. § 1983 action brought by Nathalie Gallardo, a former student at

21   Hanford High School ("Plaintiff"), against the school principal at the time, Cheryl Hunt; an

22   assistant or vice principal, Mark Dutra; a Campus Safety officer, Andrew Maza; and the Hanford

23   Joint Union School District ("School District"), which operates the high school (collectively,

24   "Defendants").  Plaintiff filed an initial complaint for damages in this action, and, after

25   Defendants brought a motion to dismiss that complaint, filed a First Amended Complaint ("FAC"

26   or "complaint").  Pending before the Court is Defendants' motion to dismiss the FAC.  (Doc. 27).

27   The matter is fully briefed and was taken under submission on the papers pursuant to Local Rule

28

230(g).  (Doc. 35).

## PLAINTIFF'S FIRST AMENDED COMPLAINT

**(1)** **First Cause of Action: Violation of Fourth Amendment Rights**

Plaintiff's complaint sets forth two causes of action pursuant to 42 U.S.C. § 1983.  The first cause of action is an illegal search and seizure claim, premised on alleged violations of Plaintiff's rights under the Fourth Amendment to the United States Constitution.  The complaint does not clearly specify to which Defendants the first cause of action is directed.  Andrew Maza, Mark Dutra and Cheryl Hunt are named in the first cause of action; the School District is not specifically named as a defendant in the first cause of action.  Doc. 20, FAC, ¶¶ 9-12.

The complaint alleges that the illegal search and seizure occurred on September 30, 2010, while the Plaintiff was attending class during a regular session at Hanford High School.  Doc. 20, FAC, ¶ 5.  Defendant Andrew Maza, a campus safety officer assigned to the school, entered Plaintiff's seventh-period class to talk to another student in the class in the course of investigating the theft of an ipod at the school.  *Id.* at ¶¶ 6, 8.  The ipod was stolen in a sixth-period class in a different classroom, but the student sought out by Defendant Maza was suspected of having taken it based on a specific report from a fellow student.  *Id.*  The complaint alleges that after the suspected student denied knowledge of the ipod or any involvement in the theft, Defendant Maza searched the bags of all students present in the classroom, including Plaintiff's handbag.  *Id.* at ¶¶ 8-9.  In the course of searching Plaintiff's handbag, Defendant Maza discovered "a small, folding-blade knife," which he promptly "seized" and delivered to Defendant Mark Dutra, a vice principal at Hanford High School.  *Id.* at ¶¶ 10, 11.  The complaint alleges that Defendant Dutra "retained" the knife and "delivered it into the actual or constructive custody of [D]efendant Cheryl Hunt," then the principal of Hanford High School, who, in turn, reported Plaintiff to the Hanford Police Department and turned the knife over to them.  *Id.* at ¶¶ 11, 12.  Thereafter,

Defendant Hunt suspended Plaintiff and recommended that she be expelled from school.  *Id.*at

¶13.  Plaintiff attended an expulsion hearing but ultimately returned to school.  *Id.* at ¶ 14.  The

complaint seeks general damages as well as economic damages in excess of $ 1,000.000.00

respectively, based on the alleged unlawful search and seizure effected by school officials acting

pursuant to "customs, policies, and practices" of the School District.  *Id.* at ¶¶ 15, 16.

**(2)    Second Cause of Action: Retaliation**

The second cause of action included in the complaint is entitled "Retaliation for Assertion

of Federal Civil Rights."  Doc. 20, FAC, p. 6.  The complaint alleges that following Plaintiff's

return to school after her suspension and until her graduation from Hanford High School in 2012,

she suffered "discriminatory treatment by [the School] District in retaliation for her assertion of

her federal civil rights."  *Id.* at ¶ 18.  The complaint explains that Plaintiff asserted "her federal

civil rights in response to actions by [D]efendants Hunt and Dutra" taken pursuant to School

District policy, that led to "her suspension and recommended expulsion from Hanford High

School." *Id.* at ¶ 18.  The complaint alleges that incidents of discrimination suffered by the

Plaintiff included "being closely questioned and scrutinized by [D]efendant Dutra for incidents in

which she had no part, or in which other students had a greater part but were not so closely

questioned and scrutinized by [Defendant] Dutra."  *Id*. at ¶ 19.  The complaint seeks general and

economic damages in excess of $ 1,000,000.00 respectively, for injuries suffered as a result of

"the unlawful discrimination by the [D]efendants."  *Id.* at ¶¶ 20, 21.

**STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss may be made and

granted when the complaint fails "to state a claim upon which relief can be granted."  Dismissal

under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or

sufficient facts to support a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d

696, 699 (9th Cir. 1990).

"To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (rejecting interpretation of Rule 8 that permits dismissal only when the plaintiff can prove "no set of facts" in support of his claim). A complaint survives a motion to dismiss only if it states a plausible claim for relief. *Twombly*, 550 U.S. at 557. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation and quotation marks omitted).

Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" do not suffice to state a plausible entitlement to relief. *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertions[s]" devoid of "further factual enhancement." *Id.* at 557. Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. 662, 678. Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In ruling on a motion to dismiss, the court must "accept all factual allegations of the complaint as true and draw all reasonable inferences" in the light most favorable to the nonmoving party. *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999); *see also Iqbal*, 556 U.S. at 678-679 (a complaint's "well-pleaded factual allegations" are accepted as true).

4

However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); *Doe I v. Wal–Mart Stores, Inc.*, 572 F.3d 677, 683 (9th Cir. 2009) ("Plaintiffs' general statement that Wal–Mart exercised control over their day-to-day employment is a conclusion, not a factual allegation stated with any specificity.  We need not accept Plaintiffs' unwarranted conclusion in reviewing a motion to dismiss.").

The Ninth Circuit has summarized the governing standard, in light of *Twombly* and *Iqbal*, as follows: "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

## DISCUSSION

**(1)** **First Cause of Action: Violation of Fourth Amendment Rights**

The first cause of action in the FAC is entitled "Violation of Rights Secured by the Fourth Amendment to the United States Constitution."  Doc. 20, FAC, p. 2.  The FAC asserts that Defendant Maza, a campus security officer at Hanford High School, "conducted an intrusive, unreasonable search" of Plaintiff's handbag, "without warrant [or] plaintiff's consent[,] and without probable or reasonable cause to believe that the handbag contained evidence of criminal or unlawful activity of any kind."  *Id.* at ¶ 9.  The FAC alleges that "as a direct and proximate result of the unreasonable search of plaintiff's handbag, Maza discovered a small, folding blade knife of a size and character not prohibited by law to be in the immediate possession of a student."  *Id.* at ¶ 10.  The FAC alleges that Defendant Maza turned the knife over to Defendant

Dutra, who "retained" it "[w]ithout any probably cause to believe that the knife constituted evidence of criminal or unlawful activity." *Id.* at ¶ 11. The FAC further alleges that Defendant Dutra then turned the knife over to Defendant Hunt, *id.* at ¶¶ 10-11, who, in turn, handed the knife over to the Hanford Police Department. *Id.* at ¶ 12.

The complaint states that in conducting the illegal search of Plaintiff's handbag and effecting the illegal seizure of the knife found therein, each individual defendant acted pursuant to "a custom, policy, or practice of the District." Doc. 20, FAC, at ¶¶ 9, 11, 12 and 13. While this language suggests that Plaintiff possibly seeks to assert a *Monell* claim against the School District, Plaintiff does not explicitly reference the School District as a defendant in the first cause of action.[1] Moreover, the complaint does not specify whether the individual defendants are being sued in their official or personal capacities. Where the complaint is silent on this issue, generally courts consider the "essential nature" of the proceeding in determining whether a suit is an individual-capacity or official-capacity suit. *See Eaglesmith v. Ward*, 73 F.3d 857, 859 (9th Cir. 1996). More specifically, the Ninth Circuit has held that a § 1983 suit for damages against state officials necessarily implies a suit against them in their individual capacities. *See Cerrato v. San Francisco Community College Dist.*, 26 F.3d 968, 973 n. 16 (9th Cir. 1994); *Price v. Akaka*, 928 F.2d 824, 828 (9th Cir. 1991). Since the Ninth Circuit has found that school districts in California are "arm[s] of the State," school officials are considered state officials for purposes of a § 1983 action. *Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 250, 254 (9th Cir. 1992);

---

[1] To the extent that Plaintiff is attempting to assert a *Monell* claim against the School District, this claim is dismissed because it fails to meet the plausibility standard applicable to Rule 8(a) of the Fed. R. Civ. P. A claim against a local government entity for liability under § 1983 requires an allegation that "a deliberate policy, custom, or practice . . . was the 'moving force' behind the constitutional violation . . . suffered." *Galen v. County of Los Angeles*, 477 F.3d 652, 667 (9th Cir. 2007); *also see City of Canton, Ohio, v. Harris*, 489 U.S. 378, 385 (1989) (a *Monell* plaintiff must show "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation"). Here the complaint makes the bare assertion that the individual defendants acted pursuant to a School District policy, but does not contain any facts regarding the existence, nature and substance of the policy or explain how the policy was the moving force behind the constitutional violation at issue. Therefore, any claim against the School District does not meet the plausibility requirement of Fed. R. Civ. P, Rule 8(a). Furthermore, as an "arm of the State of California," the School District is entitled to Eleventh Amendment immunity. *See Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 250, 254 (9th Cir. 1992); *also see* Section (3) of this Order below.

*also see Corales v. Bennett*, 567 F.3d 554, 573 (9th Cir. 2009). Therefore any § 1983 suit for damages against them in their official capacities would be barred by the Eleventh Amendment to the United States Constitution. *See Regents of the Univ. of Calif. v. Doe*, 519 U.S. 425, 429 (1997). Accordingly, for the purposes of ruling on the instant motion to dismiss, the Court will assume that this claim was brought against the individual school officials in their personal rather than official capacities.[2] *See Hafer v. Melo*, 112 S.Ct. 358, 362-65 (1991) ("[T]he Eleventh Amendment does not erect a barrier against suits to impose individual and personal liability on state officials under § 1983.") (internal quotation marks omitted).

### (a) Defendant Maza is Entitled to Qualified Immunity for the Search of Plaintiff's Handbag

Defendants argue that the Plaintiff's claim that Defendant Maza's search of her handbag violated her Fourth Amendment rights should be dismissed because Defendant Maza's actions were protected by qualified immunity. A governmental official whose actions are entitled to qualified immunity is afforded absolute immunity from a law suit challenging those actions. *See Saucier v. Katz*, 533 U.S. 194, 200-201 (2001), overruled on other grounds by *Pearson v. Callahan*, 555 U.S. 223, 242 (2009) (qualified immunity affords "an *immunity from suit* rather

---

[2] To the extent that Plaintiff is attempting to sue the individual defendants in their official capacities, in addition to being barred by the Eleventh Amendment, these claims do not meet the plausibility standard applicable to Rule 8(a) of the Fed. R. Civ. P. The Supreme Court has held that an "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Brandon v. Holt*, 469 U.S. 464, 471–72, (1985); *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991). Such a suit "is not a suit against the official personally, for the real party in interest is the entity." *Graham*, 473 U.S. at 159. However, a local government unit may not be held vicariously liable for the unconstitutional acts of its employees under a *respondeat superior* theory of liability. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Webb v. Sloan*, 330 F.3d 1158, 1163-64 (9th Cir. 2003); *Gibson v. County of Washoe*, 290 F.3d 1175, 1185 (9th Cir. 2002). Rather, a local government unit may only be held liable if it inflicts the injury complained of. *Monell*, 436 U.S. at 694; *Gibson*, 290 F.3d at 1185. As discussed in Note 1 above, a claim against a local government entity for liability under § 1983 requires an allegation that "a deliberate policy, custom, or practice . . . was the 'moving force' behind the constitutional violation . . . suffered." *Galen v. County of Los Angeles*, 477 F.3d 652, 667 (9th Cir. 2007); *City of Canton, Ohio, v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197 (1989) (a *Monell* plaintiff must show "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation"). Here the complaint makes the bare assertion that the individual defendants acted pursuant to a School District policy, but does not contain any facts regarding the existence, nature and substance of the policy or explain how the policy was the moving force behind the constitutional violation at issue. Therefore, to the extent Plaintiff wishes to assert "official capacity" claims against the individual defendants, these claims would not meet the plausibility requirement of Fed. R. Civ. P, Rule 8(a).

than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial") (emphasis in original).  Accordingly, the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in the litigation."  *Pearson*, 555 U.S. at 232.

Government officials are afforded qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson* 555 U.S. at 231.  The Supreme Court has noted that, "as the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Until 2009, in resolving a claim of qualified immunity, courts were required to undertake a two-step inquiry.  Under this two-step inquiry, courts first determined whether, taken in the light most favorable to the plaintiff, the defendant's conduct violated a constitutional right; if so, courts next considered whether that right was clearly established.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009).  However, in 2009, the Supreme Court stated, in *Pearson v. Callahan*, that "we now hold that the *Saucier* protocol should not be regarded as mandatory in all cases," although "we continue to recognize that it is often beneficial."[3]  *Pearson*, 555 U.S. at 236 (overruling holding in *Saucier* that the two-step inquiry

---

[3] *Pearson* explained that bypassing the issue of whether a constitutional violation occurred in favor of directly addressing whether the right at issue was clearly established is advisable in many instances.  The Court noted, for example, that "[w]hen qualified immunity is asserted at the pleading stage, the precise factual basis for the plaintiff's claim or claims may be hard to identify."  *Pearson*, 555 U.S. at 238-239.  "Accordingly, several courts have recognized that the two-step inquiry is an uncomfortable exercise where the answer to whether there was a [constitutional] violation may depend on a kaleidoscope of facts not yet fully developed and have suggested that it

must be conducted such that the second step is reached only if the court first finds a constitutional

violation); *also see Mueller*, 576 F.3d at 993-94.  Accordingly, courts now have the discretion to

address the two-step inquiry in the order they deem most suitable under the circumstances, and

may address directly whether the right at issue was clearly established rather than first

determining whether an actual constitutional violation is alleged in the complaint.

>            *(i)*        ***The Law did not Clearly Establish that the Search was Unconstitutional***

In this instance, the Court elects to proceed directly to the second step of the inquiry to

determine whether the school search at issue in this case violated clearly established law.

Defendant Maza is entitled to qualified immunity unless it was clearly established under federal

law that his search of Plaintiff's handbag violated the Fourth Amendment.  *Pearson*, 555 U.S. at

243-244.  The qualified-immunity inquiry "turns on the objective legal reasonableness of the

[challenged] action, assessed in light of the legal rules that were clearly established at the time it

was taken." *Id.* at 244; *also see Hope v. Pelzer*, 536 U.S. 730, 739 (2002) ("qualified immunity

operates to ensure that before they are subjected to suit, officers are on notice their conduct is

unlawful") (internal quotation marks omitted).  For purposes of this inquiry, the Court considers

the state of the law in 2010, when the search at issue in this case occurred.  Doc. 1, ¶ 5.

Well before 2010, the Supreme Court addressed the issue of school searches in two

seminal cases: *New Jersey v. T.L.O.*, 469 U.S. 325 (1985) and *Vernonia Sch. Dist. 47J v. Acton*,

515 U.S. 646, 653-654 (1995).  In addition, in *Smith v. McGlothlin*, 119 F.3d 786 (9th Cir. 1997),

the Ninth Circuit interpreted the holdings of *T.L.O.* and *Vernonia* with regard to school searches

that were not based on individualized suspicion.

In *New Jersey v. T.L.O.*, 469 U.S. 325 (1985), the Supreme Court held that "the Fourth

Amendment applies to searches conducted by school authorities." *Id.* at 337.  The Court

---

may be that *Saucier* was not strictly intended to cover this situation." *Id.* at 239 (internal quotation marks, ellipses, and parentheses omitted).

emphasized that "the underlying command of the Fourth Amendment is always that searches and seizures be reasonable." *Id.* However, "what is reasonable depends on the context within which a search takes place." *Id.* The Court explained that "[t]he determination of the standard of reasonableness governing any specific class of searches requires "balancing the need to search against the invasion which the search entails"[4] *Id.* "On one side of the balance are arrayed the individual's legitimate expectations of privacy and personal security; on the other, the government's need for effective methods to deal with breaches of public order." *Id.*

In *T.L.O.*, the Supreme Court recognized that unlike convicted prisoners, students clearly have legitimate privacy interests in their persons and personal effects, including purses and other bags carried on their persons. However, the Court noted that school administrators' have an equally legitimate need to maintain an environment in which learning can take place. *Id.* at 339-340. In trying to strike the appropriate balance between these two legitimate yet competing interests, the Court stated that "the school setting requires some easing of the restrictions to which searches by public authorities are ordinarily subject." *Id.* at 340. Accordingly, the Court found that "school officials need not obtain a warrant before searching a student who is under their authority," noting that a warrant requirement would "unduly interfere with the maintenance of the swift and informal disciplinary procedures needed in the schools." *Id.* at 340. The Court next considered the advisability of a probable cause requirement. The Court concluded that a balance between the privacy interests of students and schools' need to maintain order "does not require strict adherence to the requirement that searches be based on probable cause to believe that the subject of the search has violated or is violating the law." *Id.* at 341. "Rather, the legality of a

---

[4] In *Vernonia School District 47J v. Acton*, 515 U.S. 646 (1995), the Supreme Court stated that in the case of school searches— regarding which "there was no clear practice, either approving or disapproving" such searches at the time the Fourth Amendment was enacted because public schooling did not exist then—whether a particular search meets the reasonableness standard set forth in the Fourth Amendment "is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Id.* at 652-653 (internal quotation marks and footnote omitted).

1  search of a student should depend simply on the reasonableness, under all circumstances, of the

2  search."[5]  *Id.*  The Supreme Court expressed the hope that a simple "reasonableness" standard

3  would permit school officials "to regulate their conduct according to the dictates of reason and

4  common sense."  *Id.* at 343.  Subsequently, in *Safford Unified Sch. Dist. No. 1 v. Redding*, 557

5  U.S. 364, 371 (2009), the Supreme Court explained that "[t]he lesser standard for school searches

6  could as readily be described as a moderate chance of finding evidence of wrongdoing."

7

8         Importantly, the Supreme Court did not decide in *T.L.O.* "whether individualized

9  suspicion is an essential element of the reasonableness standard" applicable to searches by school

10  authorities.[6]  *Id.* at 342, n. 8.  The Court noted that "the Fourth Amendment imposes no

11  irreducible requirement of [individualized] suspicion," but cautioned that "[e]xceptions to the

12  requirement of individualized suspicion are generally appropriate only where the privacy interests

13  implicated by a search are minimal and where other safeguards are available to assure that the

14  individual's reasonable expectation of privacy is not subject to the discretion of the official in the

15

16  _____

17  [5] The Supreme Court applied a twofold test to assess the "reasonableness" of the school search at issue in *T.L.O.*  The Court observed, "first, one must consider whether the [search] was justified at its inception; second, one must

18  determine whether the search as actually conducted was reasonably related in scope to the circumstances which justified the interference in the first place."  *T.L.O.*, 469 U.S. at 343 (internal quotation marks, ellipses, and citations omitted).  Generally, "a search of a student by a teacher or other school official will be 'justified at its inception'

19  when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school."  *Id.* at 341-342.  "Such a search will be permissible in its scope

20  when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction."  *Id.* at 342.

21         In *T.L.O.*, a school official searched a student's purse for cigarettes after a teacher saw the student smoking in a restroom in violation of a school rule.  *Id.* at 328.  Upon searching the purse, the school official found a pack of

22  cigarettes and rolling papers, which were often used by students to smoke marijuana.  *Id.*  A further search of the purse revealed marijuana, a pipe, empty plastic bags, a substantial quantity of single dollar bills, an index card that

23  listed the names of students who owed the student, T.L.O., money, and two letters implicating her in marijuana dealing.  *Id.*  The Supreme Court found that the searches at issue in *T.L.O.* were reasonable.  *Id.* at 347.  First the

24  Court determined that decision to open T.L.O.'s purse was reasonable because the teacher's report that T.L.O. was smoking in the restroom gave the official a reasonable basis to suspect that the purse would contain cigarettes, and

25  that, once discovered, T.L.O.'s possession of cigarettes would corroborate the report that she had been smoking.  *Id.* at 345-346.  Next, the Court reasoned that the further search for marijuana was justified because the discovery of

26  rolling papers gave rise to a reasonable suspicion that T.L.O. was carrying marijuana as well as cigarettes in her purse.  *Id.* at 347.

27  [6] The Court stated: "Because the search of T.L.O.'s purse was based upon an individualized suspicion that she had violated school rules … we need not consider the circumstances that might justify school authorities in conducting

28  searches unsupported by individualized suspicion."  *T.L.O.*, 469 U.S. at 342, n. 8.

field." *Id.* (internal quotation marks omitted).  For example, the Court has upheld exceptions to the general rule requiring individualized suspicion when justified by "special needs," which are defined as "concerns other than crime detection." [7]  *Chandler v. Miller*, 520 U.S. 305, 313-314 (1997) (particularized exceptions to the main rule—i.e., that to be reasonable under the Fourth Amendment a search must be based on individualized suspicion of wrongdoing—are sometimes warranted based on "special needs," beyond the normal need for law enforcement); *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 624 (1989) ("In limited circumstances, where the privacy interests implicated by the search are minimal, and where an important governmental interest furthered by the intrusion would be placed in jeopardy by a requirement of individualized suspicion, a search may be reasonable despite the absence of such suspicion.").

In *Vernonia v. School Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995), the Supreme Court noted that previously, in *T.L.O.*, it had "found such 'special needs' to exist in the public school context."  Specifically, the Court explained that *T.L.O.* had held that the Fourth Amendment's requirements were relaxed in school environments because of the special need "to maintain order in the schools."  *Id.*  The Court further observed that in light of the special considerations applicable to schools, *T.L.O.* had "explicitly acknowledged," in the context of school searches, that "the Fourth Amendment imposes no irreducible requirement" of individualized suspicion of wrongdoing.  *Id.*  In *Vernonia*, the Court then upheld a suspicionless search, finding that a school district's policy that authorized planned and random drug-testing (specifically, urinalysis) of all

---

[7] Where the government asserts "special needs"—defined as "concerns other than crime detection"—as justification for a suspicionless search, "courts must undertake a context-specific inquiry, examining closely the competing private and public interests advanced by the parties."  *Chandler v. Miller*, 520 U.S. 305, 314 (1997) (citation omitted).  The search will be upheld only where the government's interests in conducting the search are "substantial—important enough to override the individual's acknowledged privacy interest, sufficiently vital to suppress the Fourth Amendment's normal requirement of individualized suspicion."  *Id.* at 318; *also see, e.g., Camara v. Municipal Court*, 387 U.S. 523 (1967) (upholding suspicionless, random code-enforcement inspections where justified by health and safety concerns and where requirement of individualized suspicion would render search regime ineffectual); *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 630–31 (1989) (upholding suspicionless urinalysis of railroad employees following train accidents where compelling interest in preventing accidents from occurring would not be served by requirement of individualized suspicion).

students participating in its athletics programs did not violate the Fourth Amendment.

A Government official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would have understood that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *also see Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."); *Brosseau v. Haugen*, 543 U.S. 194, 200 (2004) ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."); *Somers v. Thurman*, 109 F.3d 614, 621 (9th Cir. 1997) ("Government officials are not required to anticipate subsequent legal developments, and … cannot fairly be said to 'know' the law unless it is sufficiently unmistakable from authoritative sources.  It is not even enough to demonstrate that the constitutional norm relied on is the logical extension of principles and decisions already in the books."); *Saylor v. Bd. of Educ*., 118 F.3d 507, 515–16 (6th Cir. 1997) (in order for the law to be clearly established as of the date of the incident, the law must "'truly compel (not just suggest or allow or raise a question about), the conclusion ... that what defendant is doing violates federal law in the circumstances'") (quoting *Lassiter v. Ala. A & M Univ., Bd. of Trustees*, 28 F.3d 1146, 1150 (11th Cir. 1994)).  Hence, the salient question before the Court is whether the state of the law in 2010 would have given a reasonable administrator fair notice that the search at issue here was unconstitutional, such that any mistake to the contrary would have been unreasonable. *Chappell v. Mandeville*, 706 F.3d 1052, 1056-57 (9th Cir. 2013) (quotation marks omitted); *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).  The Court notes, given the relevant legal framework, that Plaintiff has not cited any authority that  resolves the question of the applicability of qualified immunity in Plaintiff's favor.

The Supreme Court has instructed that the "clearly established" inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau*, 543 U.S. at 198 (quoting *Saucier*, 533 U.S at 201).  Accordingly, cases "cast at a high level of generality," will be sufficient to clearly establish the unlawfulness of the defendant's actions only where the conduct at issue is "obviously" a violation based on the prior cases.  *Id.* at 199.  In light of all relevant facts and circumstances, the present matter does not present such an "obvious" violation.  Despite the specificity required to defeat a claim of qualified immunity, Plaintiff does not cite to any cases that approximate the factual circumstances of the instant case so as to demonstrate that Defendant Maza had fair notice that his actions were unconstitutional at the time of the search in question.  While *T.L.O.* and *Vernonia* set forth general principles that apply to school searches, they do not explain how school officials should apply these principles in the wide variety of specific factual circumstances that they confront on a daily basis.  *See, e.g.*, *Jenkins by Hall v. Talladega City Bd. of Educ.*, 115 F.3d 821, 828 (11th Cir. 1997) (en banc) (stating, with respect to *T.L.O.*, that "school officials cannot be required to construe general legal formulations that have not once been applied to a specific set of facts by any binding judicial authority").  Therefore, while *T.L.O.* and *Vernonia* provide useful guidelines for "determining the law in many different kinds of circumstances," they are not "the kind of clear law (clear answers)" that would give Defendants adequate notice regarding the illegality of their actions.  *Brosseau*, 543 U.S. at 199; *also see Williams v. Ellington*, 936 F.2d 881, 886 (6th Cir. 1991) ("the reasonableness standard articulated in *New Jersey v. T.L.O.*, has left courts later confronted with the issue either reluctant or unable to define what type of official conduct would be subject to a 42 U.S.C. § 1983 cause of action").

Defendants argue that they are entitled to qualified immunity in light not only of *T.L.O.* and *Vernonia*, but also of a Ninth Circuit case, *Smith v. McGlothlin*, 119 F.3d 786 (9th Cir. 1997).

Specifically, Defendants contend:

> Here, although the facts alleged do lead to an inference that there was no individualized suspicion that the plaintiff had possession of the stolen IPOD, there was a reasonable suspicion that the IPOD was in the possession of a student in the room, and upon determining the original suspect did not have possession of this stolen property, it was reasonable to conduct the limited search of the handbags of the other students in the room.  There is no question that a school has a strong and substantial interest in maintaining the security of its students from theft and property loss, and conducting this search in this way, given the circumstances alleged, was reasonable as a matter of law given the fact that had the search not been conducted, it was almost certain the victim would have lost her property.

Doc. 28, Mtn. to Dismiss, p. 7.  In *Smith v. McGlothlin*, the case cited by Defendants, the Ninth Circuit considered whether a school vice-principal, James McGlothlin, was entitled to qualified immunity in regard to the search of a high-school student, Beth Ann Smith.  Smith was part of a group of students who were searched after they came under suspicion of smoking.  During the search, Smith was found to be carrying three knives.  Smith brought a law suit contending that the vice principal acted unreasonably in searching her because he did not have individualized suspicion that she had been smoking.  The Ninth Circuit summarized the relevant facts as follows:

> It all started at 7:30 on a schoolday morning in 1994 when McGlothlin and a school security guard traveled to a cul-de-sac near the school. McGlothlin had received complaints from neighbors that students on their way to school were congregating there, smoking. As he approached a group of 20 or so students, he noticed a cloud of smoke over their heads and furtive motions he associated with the discarding of smoking materials. Because he could not see which of the students had been smoking, he herded all of them to school and ordered them to remain in the suspension room. He then had each student searched individually, which took about two hours. It was during this search that Smith's knives were found.

*Id*. at 787.  The Ninth Circuit quickly concluded that McGlothlin was entitled to qualified immunity for conducting the search:

In *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985), the Supreme Court held that school officials conducting student searches must act reasonably. The Court expressly left open "whether individualized suspicion is an essential element of the reasonableness standard." *Id.* at 342 n. 8, 105 S.Ct. at 743.  The Court has since approved a student search not based on individualized suspicion, *see Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 663–65, 115 S.Ct. 2386, 2396, 132 L.Ed.2d 564 (1995) (urinalysis of high school athletes), suggesting that individualized suspicion is not the sine qua non of reasonableness *in this context* …

Were we required to rule whether the search was lawful, there would be authority for concluding it was. But we need not go so far because the district court dismissed on grounds of qualified immunity. The court held that it was not clearly established that the search was improper; vice principal McGlothlin, as a state official, was therefore immune from suit. *See Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).  As it is fairly clear that Smith was *not in fact entitled to individualized suspicion* before she could be searched, it could not have been clearly established in 1994 that she had such a right.

*Id.* at 788 (emphases added).

The facts at issue in *McGlothlin* can be distinguished to some degree from the facts alleged in the instant complaint.[8]  Nonetheless *McGlothlin* clearly enunciates the principle, for purposes of Circuit precedent, that school students are "not in fact entitled to individualized suspicion before" they can be searched.  *Id.* at 788.  The Court therefore recognizes that school officials conducting searches such as the one at issue here could reasonably have relied on *McGlothlin*, especially in light of the fact that they are not experts in the law.  Investigating the ipod theft in question took Defendant Maza to the seventh-period class in which the suspected student was present along with a number of her peers.  After speaking with the suspected student

---

[8] The group of students searched in *McGlothlin* were in an alley next to their school where legitimate school activities would not be conducted; the school had received prior complaints that students had been smoking in that particular alley; and school officials saw a cloud of smoke over the group of students immediately before the students were searched.  These facts can be contrasted in material respects with those of the instant case, where the Plaintiff was present in the seventh period class because her schedule required her to be there; there was no known relationship between Plaintiff and the suspected student; and there was no guarantee that the stolen ipod was present in the classroom where the search occurred.

proved unfruitful, Defendant Maza searched the bags in the room evidently because he assumed that the stolen ipod was likely to be present in the classroom.  While Defendant Maza may well have been mistaken that he could legally search the bags of all the students in the room merely for the purpose of locating a missing ipod, it cannot be said that clearly-established federal law put him on notice that his conduct was prohibited.  *See Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011) ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.  When properly applied, it protects "all but the plainly incompetent or those who knowingly violate the law.") (quoting *Malley v. Briggs*,  475 U.S. 335, 341 (1986)).  School officials could reasonably rely on the general principle articulated in *McGlothlin* that the requirement of individualized suspicion is not applicable to school searches.  *McGlothlin*, 119 F.3d at 788 ("As it is fairly clear that Smith was not in fact entitled to individualized suspicion before she could be searched, it could not have been clearly established in 1994 that she had such a right.").

Finally, the Court notes that qualified immunity is particularly appropriate here because the applicable standard boils down to a very broad, flexible and context-specific "reasonableness" inquiry.  "[T]he *T.L.O.* Court refrained from addressing the issue of whether individualized suspicion is required for a school search to be reasonable, and instead adopted a general, two-prong, multi-factor "reasonableness" test which calls for a balancing of students' interests against those of school officials." *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 953 (11th Cir. 2003) citing *T.L.O.*, 469 U.S. at 341-43 (noting that T.L.O. made no "attempt to establish clearly the contours of a Fourth Amendment right as applied to the wide variety of possible school settings different" from those presented by the facts of the *T.L.O.* case); *also see Vernonia*, 515 at 652-653.  Given that the Supreme Court has evaluated the constitutionality of school searches by applying various balancing tests to assess the "reasonableness" of particular searches, school

officials often do not have "fair warning" whether a particular search would be unconstitutional. *See Thomas ex rel. Thomas*, 323 F.3d at 954 ("T.L.O.'s balancing test will, in most instances, call for school officials to speculate as to whether a court applying the balancing test to specific facts would find a search unreasonable"); *also see Marsh v. Butler County, Ala*., 268 F.3d 1014, 1031 n. 9 (11th Cir. 2001) (en banc) (where the applicable legal standard is a highly general one, such as "reasonableness," preexisting caselaw that has applied general law to specific circumstances will almost always be necessary to draw a line that is capable of giving fair and clear notice that an official's conduct will violate federal law). The instant case certainly a presents a scenario with competing interests at stake. The search was conducted to recover a stolen ipod. While the recovery of stolen property does not justify as great an intrusion as would, for example, locating drugs or weapons, schools clearly have a responsibility to maintain an environment where all rules are enforced and breaches of order minimized. *See Bd. of Educ. of Indep. Sch. Dist. No. 92 of Pottawatomie County v. Earls*, 536 U.S. 822, 830 (2002) ("[a] student's privacy interest is limited in a public school environment where the State is responsible for maintaining discipline, health, and safety"). Moreover, the search was limited to Plaintiff's handbag and did not extend to her person.

Although ultimately the constitutionality of the search here may be in question, the fact remains that the applicable law does not "clearly establish" that the search was illegal. Plaintiff has not cited authority that would give Defendant Maza "fair notice" that his conduct was unconstitutional. On the contrary, based on *McGlothlin*, Defendant Maza reasonably could have believed that his search of Plaintiff's handbag was legal. *See McGlothlin*, 119 F.2d at 788 (under *T.L.O.* and *Vernonia*, "it is fairly clear" that schoolchildren are not "entitled to individualized suspicion" before they can be searched); *also see Shade v. City of Farmington, Minnesota*, 309 F.3d 1054, 1057 (8th Cir. 2002) (finding objectively reasonable a search of a group of 8 students

18

when one of them had been seen holding a knife on school bus).  Therefore, the Court concludes that Defendant Maza is entitled to qualified immunity.

> **(b)** **The Seizure of Plaintiff's Knife by School Officials did not Violate Clearly Established Federal Law**

Defendants' next argue in their motion to dismiss that Plaintiff's illegal seizure claims should be dismissed because school officials did not illegally seize Plaintiff's knife under the Fourth Amendment, and the seizure of the knife was not a clear violation of Plaintiff's Fourth Amendment rights.  Doc. 38, Mtn. to Dismiss, pp. 8-9.  Defendants point out that California Penal Code § 626.10(a) makes it a criminal offense to possess, on school grounds, certain weapons, including a knife with a blade longer than 2½ inches and a folding knife with a blade that locks into place.  In addition, various provisions of the California Education Code make the possession of a knife by a student grounds for suspension or a recommendation for expulsion.  *See, e.g*., California Education Code § 48900(b) (possession of a knife); § 48915(a)(1)(B) and (g) (possession of any knife or other dangerous object of no reasonable use to the pupil, where "knife" is defined as, *inter alia*, a weapon with a blade longer than 3½ inches and a folding knife with a blade that locks into place).

Here Plaintiff's handbag was searched in the course of an investigation into a stolen ipod, leading to the discovery of a knife that was confiscated by school authorities.  Under the Fourth Amendment, a seizure is any government action that materially interferes with a student's possessory interests in tangible property.  *U.S v Jacobsen*, 466 U.S. 109, 113 (1984).  Therefore, the confiscation of Plaintiff's knife here did constitute a "seizure" under the Fourth Amendment.  Although *T.L.O.* was decided in the context of a school search, its "reasonableness" standard (in contrast to the "probable cause" standard) has since been applied to school seizures as well.  *See, e.g., Doe v. State of Hawaii Dep't of Educ.*, 334 F.3d 906, 909 (9th Cir. 2003) ("In applying the Fourth Amendment in the school context, the reasonableness of the seizure must be considered in

1  light of the educational objectives [the school official] was trying to achieve.") (citing *T.L.O.*, 469

2  U.S. at 342); *Hunter v. Bd. of Trustees of Oroville Union Sch. Dist.*, 156 F.3d 1237, 1237 (9th

3  Cir. 1998) ("The standard for searches and seizures in the public school context is relaxed.)

4  (citing *T.L.O.*, 469 U.S. at 340-342); *Wallace v. Batavia Sch. Dist.* 101, 68 F.3d 1010 (7th Cir.

5  1995); *Edwards v. Rees*, 883 F.2d 882 (10th Cir. 1989); *Jones v. Hunt*, 410 F.3d 1221, 1228 (10th

6  Cir. 2005).

7  

8          Here the school officials took custody of Plaintiff's knife as a result of a search that did

9  not violate a clearly established right.  Plaintiff's possession of the knife potentially violated a

10  number of California Education Code provisions as well as potentially constituted a criminal

11  offense under state law.  According to the complaint, school officials commenced disciplinary

12  proceedings against Plaintiff on account of her possession of the knife on school premises.  Doc.

13  20, FAC, ¶ 13.  The complaint further alleges that school authorities reported Plaintiff's

14  possession of the knife in school to the Hanford Police Department, and transferred custody of the

15  knife to the Hanford Police Department.  Doc. 20, FAC, ¶ 12.  Given that the knife potentially

16  constituted evidence of a crime, the Hanford Police Department would be in a better position than

17  the school to determine the legality of the knife under state law.  In light of the general

18  "reasonableness" standard applicable to school searches and seizures announced in *T.L.O.*, in

19  seizing the knife for purposes of determining any disciplinary consequences for Plaintiff and in

20  turning the knife over to the Hanford Police Department for determination of any criminal

21  consequences for Plaintiff, school officials once again did not violate a clearly established

22  constitutional right.  *See Hunter v. Bd. of Trustees of Oroville Union Sch. Dist.*, 156 F.3d 1237,

23  1237 (9th Cir. 1998) ("The standard for searches and seizures in the public school context is

24  relaxed.") (citing *T.L.O.*, 469 U.S. at 340-342).  Therefore, the school officials' actions in seizing

25  the knife are also entitled to qualified immunity.

26  

27  

28

(2)     **Second Cause of Action: Retaliation**

Plaintiff's second cause of action generally alleges that Plaintiff suffered retaliation for asserting her "federal civil rights."  Doc. 20, FAC, p. 6.  More specifically, the FAC alleges that "[f]ollowing plaintiff's readmission to Hanford High School … and continuing until her graduation from Hanford High School in 2012, plaintiff suffered discriminatory treatment by the District in retaliation for her assertion of her federal civil rights in response to actions by defendants Hunt and Dutra."  *Id.*  The FAC does not clarify which civil right is at issue in Plaintiff's retaliation claim, leaving the Defendants and the Court to guess which specific rights Plaintiff is alluding to and, in turn, what legal requirements apply to her claim.  Plaintiff's general assertion that she was retaliated against for asserting her "federal civil rights" is not sufficiently clear for the Court to be able to evaluate the legal sufficiency of this claim.

The retaliatory actions alleged in the complaint are also presented in a conclusory fashion, and are not alleged with sufficient factual detail to state a plausible retaliation claim.  Finally, to the extent that Plaintiff attempts to allege a *Monell* claim against the Hanford Joint Union School District, Plaintiff again does not allege sufficient facts to state a plausible claim.  A claim against a local government entity for liability under § 1983 requires an allegation that "a deliberate policy, custom, or practice . . . was the 'moving force' behind the constitutional violation . . . suffered."  *Galen v. County of Los Angeles*, 477 F.3d 652, 667 (9th Cir. 2007); *also see City of Canton, Ohio, v. Harris*, 489 U.S. 378, 385 (1989) (a *Monell* plaintiff must show "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation"); *Plumeau v. School Dist. #40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).  Here, Plaintiff has not alleged that the retaliatory actions at issue were taken pursuant to a deliberate School District policy; nor does the complaint allege any facts establishing the existence of a relevant policy, describing the policy, or demonstrating that such a policy was the moving force behind the

constitutional violation at issue.

In sum, the second cause of action does not does not provide adequate notice to the Defendants as to the substance of the allegations that they must respond to, and does not meet the plausibility standard applicable to Rule 8(a) of the Federal Rules of Civil Procedure.  Therefore, the second cause of action is dismissed for failure to state a claim.  Plaintiff is granted leave to amend with respect to the second cause of action.

### (3)   Eleventh Amendment Immunity

Although Defendants' motion to dismiss does not address the applicability of Eleventh Amendment immunity to this case, the Court can consider this issue *sua sponte*.[9]  *In re Jackson*, 184 F.3d 1046, 1048 (9th Cir. 1999).  Broadly speaking, the Eleventh Amendment to the United States Constitution bars suits for damages in federal court against a non-consenting State.  *Kimel v. Florida Board of Regents*, 528 U.S. 62, 73 (2000).  The issue of Eleventh Amendment immunity is relevant here because school districts in California, such as Defendant Hanford Joint Unified School District, are considered "an arm of the State," and, as such, are afforded immunity from 42 U.S.C. §1983 actions for damages, pursuant to the Eleventh Amendment.[10]  *Belanger v.*

---

[9] The Eleventh Amendment erects a general bar against federal lawsuits brought against a state.  *Papasan v. Allain*, 478 U.S. 265, 276 (1986).  The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. Amend. XI.  The Amendment also bars a citizen from bringing a suit against his own state in federal court.  *Micomonaco v. Washington*, 45 F.3d 316, 319 (9th Cir. 1995).  Furthermore, the Eleventh Amendment's "reference to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities."  *Regents of the Univ. of Calif. v. Doe*, 519 U.S. 425, 429 (1997).

[10] A state agency or dependent instrumentality of the state that is found to be an "arm of the State" is immune from suits for damages under the Eleventh Amendment.  *See, e.g., Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977) (the decision to extend sovereign immunity to a public entity turns on whether the entity "is to be treated as an arm of the State partaking of the State's Eleventh Amendment immunity, or is instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend"); *Mitchell v. Los Angeles Community College Dist.*, 861 F.2d 198, 201 (9th Cir. 1988) (setting forth a five factor test to determine whether a dependent instrumentality of the state is "an arm of the state," and therefore immune from suit in federal court under the Eleventh Amendment); *Beentjes v. Placer Cnty. Air Pollution Control Dist.*, 397 F.3d 775, 778 (9th Cir. 2005)  (re-iterating the five factors as: (1) whether a money judgment would be

*Madera Unified Sch. Dist.*, 963 F.2d 248, 250, 254 (9th Cir. 1992); *Cole v. Oroville Union High School Dist.*, 228 F.3d 1092, 1100 n. 4 (9th Cir. 2000); *Stoner v. Santa Clara County Office of Education*, 502 F.3d 1116, 1122 (9th Cir. 2007) (declining to revisit *Belanger's* holding that a school district is a state agency for Eleventh Amendment purposes in light of subsequent Supreme Court authority).

The Eleventh Amendment, moreover, prohibits "official capacity" suits for damages against officials of California school districts.  *See Kentucky v. Graham*, 473 U.S. 159, 165–67 (1985) (observing that official capacity suits are equivalent to suits against the entity itself, and raise eleventh amendment concerns where the entity is a state); *Regents of the Univ. of Calif*, 519 U.S. at 429 ("when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants").

If Plaintiff elects to proceed with this action in federal court, and files an amended complaint, Plaintiff is forewarned that the Eleventh Amendment would operate to bar claims against the Hanford Joint Union School District and "official capacity" claims against the individual defendants in this action, unless the School District consented to the suit or otherwise waived the immunity conferred by the Eleventh Amendment. [11]

---

satisfied out of state funds; (2) whether the entity performs central governmental functions; (3) whether the entity may sue or be sued; (4) whether the entity has the power to take property in its own name or only the name of the state; and (5) the corporate status of the entity.  After considering *Mitchell's* five factors with regard to school districts in California, the Ninth Circuit explicitly held that owing to the unique funding system and organizational structure of school districts in California, California school districts are "arm[s] of the state" for purposes of the Eleventh Amendment.  *Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 254 (9th Cir. 1992).  Therefore, California school districts, as well California school officials sued in their official capacities, are entitled to Eleventh Amendment immunity from suits for damages.

[11] While Eleventh Amendment immunity is subject to congressional override, "congressional intent to override the principles of sovereign immunity embodied in the Eleventh Amendment must be unmistakably clear."  *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242 (1985).  It is well established that Congress has not abrogated the states' Eleventh Amendment immunity for 42 U.S.C. § 1983 actions.  *Quern v. Jordan*, 440 U.S. 332(1979) (state governments and their agencies are not amenable to suit under 42 U.S.C. § 1983); *also see Corales v. Bennett*, 567 F.3d 554, 573 (9th Cir. 2009) ("The district court correctly determined that school districts in California are immune

1

## CONCLUSION

2

For the foregoing reasons, Plaintiff's First Amended Complaint is dismissed in its

3

entirety.  Plaintiff is granted leave to amend the second cause of action.  Any Second Amended

4

Complaint shall be filed no later than March 31, 2014.

5

6

7

8

9

10

11

12

13

IT IS SO ORDERED.

14

15

Dated:   **February 26, 2014**                         **/s/ Gary S. Austin**
                                                                      UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

from § 1983 claims by virtue of Eleventh Amendment immunity").